IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JESSE OLIVAR,

        Plaintiff,                       No. CIV S-09-0091 JAM DAD PS

    v.

JOHN E. POTTER, Postmaster General, USPS, et al.,

        Defendants.               FINDINGS AND RECOMMENDATIONS

/

        This matter came before the court on January 22, 2010, for hearing of defendant's motion to dismiss or for summary judgment. Assistant United States Attorney Bobbie J. Montoya appeared for the moving party. Plaintiff, proceeding pro se, appeared on his own behalf. Oral argument was heard, and the motion was taken under submission.

        For the reasons set forth below, upon consideration of the briefing on file, the parties' arguments at the hearing, and the entire file, the court will grant defendant's motion to dismiss.[1]

/////

/////

---

[1] Because the court will grant defendant's motion to dismiss, the court need not address defendant's alternative request for summary judgment in his favor.

1

PLAINTIFF'S CLAIMS[2]

Plaintiff alleges that his former employer, the United States Postal Service, ("USPS") discriminated against him based on his race and mental disability, subjected him to physical attacks, and retaliated against him. Specifically, in his complaint plaintiff alleges as follows. On October 1, 2001, while working at the Royal Oaks Facility in Sacramento, plaintiff told Mr. Washington, an African-American Supervisor, that he was going to file a discrimination complaint against him. On October 5, 2001, plaintiff asked Washington for time off to complete his complaint to the Equal Employment Opportunity Commission ("EEOC"). Washington became agitated, ordered plaintiff out of the office, and threatened to have him arrested.

In response, plaintiff completed a Report of Hazard or Unsafe Condition or Practice form which initiated an investigation. After plaintiff was interviewed by Mr. Young, a Caucasian manager, he was told that he would be reporting to Randy Davis, a new supervisor who was also Caucasian. However, plaintiff was not in fact assigned a new supervisor and continued reporting to Mr. Washington. Plaintiff alleges that he lost his grievance stemming from this incident because his employee union colluded with the defendant against him.

On October 16, 2001, Mr. Young asked plaintiff to lower the volume of his Rhythm and Blues music, even though country music had been playing at the same volume in the same work area all morning. Young also offered some trail mix to another Caucasian postal employee but not plaintiff.

During November and December 2001, Washington solicited volunteers for a safety captain position. Plaintiff expressed his interest in the position but was told that Jessie James, an African-American, had already been selected to fill the opening. Plaintiff asked Washington to submit his name to management for the position, but was told by Washington that management did not want plaintiff to serve in that role.

---

[2] Plaintiff's factual allegations are often jumbled, conclusory and confusing. The court has attempted to recount his factual allegations in the most clear and concise manner possible.

At a December 14, 2001, safety meeting plaintiff was prohibited from submitted ideas. Submitted ideas were eligible for monetary awards. Sometime thereafter plaintiff's supervisor did change, but the harassment of plaintiff did not cease.

Plaintiff was eventually placed on off duty status by a psychiatrist for some period of time, and prescribed medication. Plaintiff filed another complaint with the EEOC in response. During this time, plaintiff's medical records were somehow disclosed to other postal employees.

Plaintiff also alleges that in January of 2002 he was overpaid by Supervisor Davis. Davis could not fix the overpayment and, according to plaintiff, therefore misappropriated funds. Plaintiff filed another EEOC complaint in response to this action. Plaintiff was then transferred to a postal facility in West Sacramento, where Supervisor Arrioja, who was Hispanic, monitored plaintiff's every move. At the West Sacramento facility plaintiff was nearly stabbed by Mr. Jackson, an African American supervisor. Plaintiff was eventually fired based on the false accusation that he refused to cooperate in an investigation concerning the sale of firearms and ammunition at the workplace.

On December 11, 2008, plaintiff filed this complaint alleging violations of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990.[3] ("Compl." - Doc. No. 1.) Plaintiff alleged that he was discriminated against based on his race, color and mental disability, naming John E. Potter, United States Postmaster General, as the defendant.[4] Specifically, plaintiff asserts that while employed by the U.S. Postal Service he was subjected to physical attacks, collusion, retaliation, and that he had his employment terminated.

On December 22, 2009, defendant filed a motion to dismiss or, in the alternative, for summary judgment. (Doc. No. 39, "Def't's Mot. to Dismiss" .) Plaintiff filed an opposition

---

[3] Plaintiff originally filed this complaint in the United States District Court for the Eastern District of New York. The matter was transferred to this court on January 8, 2009. (Doc. No. 5.)

[4] In his complaint, plaintiff also named as a defendant "Eli Lilly Pharm Company Business." That defendant was dismissed from this action on June 24, 2009. (Doc. No. 25.)

3

on January 12, 2010.  (Doc. No. 41, "Opp'n.".)  Defendant filed an amended reply on January 15, 2010.  (Doc. No. 42, "Reply".)

ANALYSIS

Defendant's motion to dismiss has been brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

I. <u>Legal Standards Applicable to Motions Brought Pursuant to Fed. R. Civ. P. 12(b)(1) & (6)</u>

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense, by motion, that the court lacks jurisdiction over the subject matter of an entire action or of specific claims alleged in the action.  "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact."  <u>Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979).

In the present case, defendant's Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact as to certain claims set forth in plaintiff's complaint.  When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, no presumption of truthfulness attaches to the plaintiff's allegations.  <u>Id</u>.  "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  <u>McCarthy v. United States</u>, 850 F.2d 558, 560 (9th Cir. 1988).  When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, plaintiff will have the burden of proving that jurisdiction does in fact exist.  <u>Thornhill Publ'g Co.</u>, 594 F.2d at 733.

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  <u>N. Star Int'l v. Ariz. Corp. Comm'n</u>, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

1  relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus,
2  a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the
3  plaintiff's claims, even if the plaintiff's allegations are true.
4          In determining whether a complaint states a claim on which relief may be granted,
5  the court accepts as true the allegations in the complaint and construes the allegations in the light
6  most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.
7  United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In general, pro se complaints are held to less
8  stringent standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519,
9  520-21 (1972). However, the court need not assume the truth of legal conclusions cast in the
10 form of factual allegations. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). The
11 court is permitted to consider material which is properly submitted as part of the complaint,
12 documents that are not physically attached to the complaint if their authenticity is not contested
13 and the plaintiff's complaint necessarily relies on them, and matters of public record. Lee v. City
14 of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).
15 II. Analysis
16      A.  Statute of Limitations
17          Defendant first argues that review of plaintiff's claim of retaliation in violation of
18 Title VII is barred by the applicable statute of limitations. (Def't's Mot. to Dismiss at 16 of 22.[5])
19 Defendant asserts that plaintiff filed four complaints with the EEOC prior to filing this action.
20 (Id.) According to defendant, the most recent decision stemming from plaintiff' EEOC
21 complaints was a decision after an appeal, issued on October 26, 2006. (Id.) Defendant argues
22 that by waiting more than two years after that administrative decision to file this action, plaintiff
23 failed to file a complaint within the ninety-day period required under Title 42 U.S.C. § 2000e-
24 16(c). (Id.)

---

[5] All citations are to the page numbers as they appear in the court's electronic filing system.

5

To establish federal subject matter jurisdiction, plaintiff is required to exhaust his EEOC administrative remedies before seeking federal adjudication of any Title VII claims. Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990). A plaintiff filing a complaint under Title VII has ninety days to file the complaint in federal court after receipt of the EEOC's right to sue letter. See 42 U.S.C. § 2000e-16(c) ("Within 90 days of receipt of notice of final action taken by . . . the [EEOC] . . . if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, [an employee] may file a civil action [.]"); 42 U.S.C. § 2000e-5(f)(1) (requiring the filing of a civil action within 90 days of receiving a right to sue notice). This requirement effectively serves as a statute of limitations for the filing of Title VII claims. See Surrell v. California Water Services, 518 F.3d 1097, 1104 (9th Cir. 2008); Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1107 (9th Cir. 1998); Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 383 (9th Cir. 1997).

In his opposition, plaintiff's only reference to defendant's argument that this civil action is time barred is a bare assertion that his claim:

> is not time-barred because Judge Jack Weinstein's Order "This Document Relates To All Actions" and Eli Lilly Plea Agreement waived statue of limitations and any other time related defense. The waiver was not intended to bar the assertion of constitutional claims.

(Opp'n at 23 of 219.)

Plaintiff's argument is both unclear and unpersuasive. Moreover, he has offered no argument to rebut defendant's showing that this action is untimely. Defendants have satisfied their burden with respect to the statute of limitations issue. It is apparent given the EEOC's October 26, 2006, decision and the fact that plaintiff did not file this action in the Eastern District of New York until December 11, 2008, that plaintiff failed to file his complaint in this action within the 90-day period set forth under Title 42 U.S.C. § 2000e-16(c). Review of plaintiff's claim of retaliation in violation of Title VII is therefore time barred. (Def't's Mot. to Dismiss, Exhibit A at 4-7 of 38.) Defendant's motion to dismiss this claim pursuant to Federal Rule of

Civil Procedure 12(b)(1) should be granted.

    B. <u>Failure to Exhaust</u>

Defendant asserts that this court lacks subject matter jurisdiction over plaintiff's wrongful termination claim because plaintiff failed to exhaust his administrative remedies with respect to that claim. (Def't's Mot. to Dismiss at 19-21.) In support of this argument defendant has provided the court with a declaration by Debbie Cabato, an "EEO Specialist for the United States Postal Service." (Declaration of Debbie Cabato - Doc. No. 39, Attach. 3.) Ms. Cabato declares that she reviewed plaintiff's EEO records and determined that, while plaintiff had filed four EEO complaints, there was no record that he ever contacted an EEO counselor with regard to a wrongful termination claim. (<u>Id.</u> at 2.) Though again unclear and somewhat confusing, plaintiff appears to argue in his opposition to the pending motion to dismiss that because he has made a sufficient start toward establishing jurisdiction he should be granted discovery to aid in establishing this court's jurisdiction over his wrongful termination claim. (Opp'n at 26-28.)

To establish federal subject matter jurisdiction for either a claim brought under Title VII or the ADA, a plaintiff is required to exhaust his administrative remedies before bringing a suit in federal court by filing a timely EEOC complaint. <u>Josephs v. Pacific Bell</u>, 443 F.3d 1050, 1061 (9th Cir. 2006) (ADA); <u>Lyons v. England</u>, 307 F.3d 1092, 1103-04 (9th Cir. 2002) (Title VII); <u>Ong v. Cleland</u>, 642 F.2d 316, 320 (9th Cir. 1981) (Title VII). This is because Title VII places the primary responsibility for disposing of employment discrimination complaints with the EEOC so as to encourage informal conciliation of such claims and foster voluntary compliance with the law. <u>Ong</u>, 642 F.2d at 319. While a plaintiff's failure to file an EEOC complaint is not a complete bar to jurisdiction by the district court, substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite. <u>Leong v. Potter</u>, 347 F.3d 1117, 1121-22 (9th Cir. 2003); <u>Sommatino v. United States</u>, 255 F.3d 704, 708 (9th Cir. 2001). Morever, the jurisdictional scope of the plaintiff's district court action depends on the scope of the EEOC charge and investigation. <u>EEOC v. Farmer Bros. Co.</u>, 31 F.3d 891, 899 (9th Cir.

7

1 1994); Sosa, 920 F.2d at 1456.  Ordinarily, the specific claims made in the district court must be
2 presented to the EEOC.  Albano v. Schering-Plough Corp., 912 F.2d 384, 385 (9th Cir. 1990).
3 The district court does however have subject matter jurisdiction "over all allegations of
4 discrimination that either 'fell within the scope of the EEOC's *actual* investigation or an EEOC
5 investigation which *can reasonably be expected* to grow out of the charge of discrimination.'"
6 B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1100 (9th cir. 2002) (quoting Farmer Bros., 31 F.3d
7 at 899 (emphasis in the original) (internal quotations omitted)).  The court must "consider
8 plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those
9 claims are consistent with the plaintiff's original theory of the case." B.K.B., 276 F.3d at 1100.
10 See also Leong, 347 F.3d at 1122 (a plaintiff cannot add new complaints to a district court action
11 unless they are "like or reasonably related" to the complaints that were administratively
12 exhausted).  In determining whether a current claim is consistent with plaintiff's original theory
13 of the case the court examines "such factors as the alleged basis of the discrimination, dates of
14 discriminatory acts specified within the charge, perpetrators of discrimination named in the
15 charge, and any locations at which discrimination is alleged to have occurred." Vasquez v.
16 County of Los Angeles, 349 F.3d 634, 644 (9th Cir. 2003).

17         Here, as noted above, plaintiff filed four complaints with the EEOC prior to the
18 filing of this civil action.  In EEO Case Number 4F-956-0036-02, according to the Final Agency
19 Decision, plaintiff presented issues of discrimination based on race, color and mental disability.
20 (Compl. at 41.)  The discriminatory conduct alleged by plaintiff in that complaint occurred
21 between October 2001 and February 2002.  (Id.)  Plaintiff did not allege a claim of wrongful
22 termination.

23         In EEO Case Number 1F-957-0069-02, according to the Partial
24 Acceptance/Dismissal notice, plaintiff alleged discrimination based on race, color, mental
25 disability, and retaliation.  (Id. at 21.)  Therein, plaintiff alleged that he had not been allowed to
26 participate in the Postal Service Safety Program and Idea program on a continual basis since

8

April 27, 1999, and was subjected to constant harassment from his managers and supervisors. (Id.) Again, there was no allegation in that complaint by plaintiff of wrongful termination.

In EEO Case Number 1F-957-0059-02 plaintiff also alleged, according to the Final Agency Decision, discrimination based on race, color, retaliation, and mental disability. (Id. at 34.) The issues involved in that complaint concerned plaintiff's exclusion from the Safety Program, an unspecified incident on October 5, 2001, the release of plaintiff's medical records to co-workers, and an allegation that plaintiff received less than one day notice to become a Safety Captain. (Id.) There was no allegation that plaintiff was wrongfully terminated.

Finally, according to the Final Agency Decision, in EEO Case Number 1F-957-0012-05 plaintiff alleged a claim of discrimination based on retaliation. (Id. at 78.) In this regard, plaintiff asserted that on March 12, 2004, his supervisor retaliated against him for filing a Report of Hazardous Condition and that on an unspecified date he was warned not to file a complaint against that same supervisor. (Id.) That complaint was dismissed as being untimely and for failing to state a claim. (Id. at 17-20.) As with his three prior EEO complaints, plaintiff did not allege wrongful termination in this complaint.

In EEO Case Number 1F-957-0012-05, the EEOC noted that while plaintiff alleged that his supervisor retaliated against him on March 12, 2004, he did not contact an EEO Counselor until January 13, 2005. (Id. at 17.) Here, while deciphering plaintiff's exact claim is difficult, plaintiff alleges that he was fired one week after a giving a deposition on July 20, 2004.[6] (Id. at 9.) Thus, plaintiff could have easily included a claim of wrongful termination in his 2005 EEO complaint filed in Case Number 1F-957-0012-05 but did not do so. While it is likely that a wrongful termination claim brought at that time would have been untimely, as plaintiff's retaliation claim was determined to be, plaintiff would have at least demonstrated that he had

---

[6] Defendant however has provided the court with the declaration of Chenelle Ponce, a Labor Relations Manager for the USPS. (Declaration of Chenelle Ponce - Doc. No. 39, Attach. 4.) Therein, Ponce declares that according to USPS records plaintiff resigned his employment effective July 25, 2005. (Id. at 1-2.)

9

attempted to present a wrongful termination claim to the EEOC. Instead, it is clear that he did not at any time present such a claim to the EEOC.

Regardless, based on the information provided in the decisions rendered in plaintiff's four EEOC cases cited above, it does not appear that plaintiff's current allegation of wrongful termination is consistent with his original theory of the complaints previously presented to the EEOC. A claim for wrongful termination was simply not within the scope of the EEOC's actual investigation of any of plaintiff's four prior complaints. Moreover, an EEOC investigation based on plaintiff's claim of wrongful termination could not have been reasonably expected to grow out of the charges of discrimination found in those four prior complaints because such a claim was not consistent with plaintiff's original theory of those cases.

Defendant has met his burden of establishing that plaintiff failed to exhaust his administrative remedies with respect to his wrongful termination claim. Accordingly, this court lacks subject matter jurisdiction to consider that claim. Defendant's motion to dismiss plaintiff's wrongful termination claim, brought pursuant to Federal Rule of Civil Procedure 12(b)(1), should therefore be granted.

C. Exclusive Judicial Remedy

Defendant observes that plaintiff's allegations of collusion and physical attack could be interpreted as state law claims. Defendant argues, however, that Title VII is the exclusive remedy available to plaintiff and preempts any state law claims. (Def't's Mot. to Dismiss at 18-19.) Plaintiff does not address defendant's argument in this regard in his opposition to the pending motion to dismiss.

The United States Supreme Court has held that Title VII of the Civil Rights Act of 1964 is the exclusive remedy for a federal employee alleging working place discrimination. Brown v. Gen. Servs. Admin., 425 U.S. 820, 829-35 (1976); Sommatino, 255 F.3d at 711 . The Ninth Circuit Court of Appeals, however, has clarified that Title VII is not the exclusive remedy for federal employees who suffer "highly personal" wrongs. Compare Brock v. United States, 64

10

F.3d 1421, 1423-24 (9th Cir. 1995) (Title VII did not preempt a FTCA claim where the conduct complained of - rape by male supervisor - constituted a highly personal violation beyond the meaning of workplace discrimination) with Sommatino, 255 F.3d at 711-12 (intentional touching and vulgar remarks did not constitute "a highly personal violation" beyond discrimination).

Here, as noted above, the precise nature of plaintiff's allegations are somewhat unclear. Plaintiff references collusion and assaults in his compliant but provides no further specific factual allegations. It is thus difficult to determine if the conduct plaintiff complains of could constitute "highly personal" wrongs.[7] Nevertheless, plaintiff's allegations with respect to this claim are so vague and conclusory that the court is unable to determine whether the claim is frivolous or fails to state a claim for relief. Plaintiff has again provided no further details of his alleged "near stabbing" by his supervisor. Such vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient to withstand a defendant's motion to dismiss. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Dismissal of these claims is appropriate on this basis alone.

Accordingly, to the extent that plaintiff is attempting to allege separate state law claims, defendant's motion to dismiss those claims should be granted.

D. Res Judicata

Defendant next argues that plaintiff filed a 2003 complaint in this court, Case No. 2:03-cv-00891 GGH, raising claims of retaliation and discrimination based on much of the same conduct plaintiff alleges in his complaint in this case.[8] (Def't's Mot. to Dismiss at 17.) According to defendant, the court granted summary judgment in favor of the defendant in that earlier filed case. (Id.) Defendant argues that because summary judgment was granted in the

---

[7] Perhaps the most specific allegation that could refer to a "highly personal wrong" is found in plaintiff's claim that he was "nearly stabbed by" Supervisor Jackson. (Compl. at 9.)

[8] The court's own records reflect that plaintiff has filed five total lawsuits, including this one, against defendant Potter. See Case Nos. 2:03-cv-00891 GGH; 2:03-mc-00096 MCE GGH; 2:04-mc-00379 LKK KJM; 2:05-cv-00022 MCE KJM; and 2:09-cv-00091 JAM DAD.

11

defendant's favor in the 2003 action filed with this court, plaintiff is precluded from raising those same claims again under the doctrine of res judicata.  (Id.)

In his opposition, plaintiff rejects defendant's argument, stating that his complaint is "not precluded by res judicata and should not be dismissed for lack of subject matter jurisdiction," because "in matters involving due process, cases that appear to be res judicata may be relitigated" and because res judicata "may not apply if consent (or tacit agreement) is justification for splitting a claim."  (Opp'n at 24, 33.)  Plaintiff provides no authority in support of his argument in this regard.

"Res judicata bars a suit when 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  ProShipLine Inc. v. Aspen Infrastructures Ltd., 609 F.3d 960, 968 (9th Cir. 2010) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).  Res judicata is applicable "when there is '(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties.'"  ProShipLine Inc., 609 F.3d at 968 (quoting Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir. 2002)).

To determine if there is an "identity of claims" four factors must be examined:

> (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.

Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 987 (9th Cir. 2005).  In deciding if two suits arise out of the "same transactional nucleus" the determinative factor is "whether they are related to the same set of facts and whether they could conveniently be tried together."  Western Systems, Inc. v. Ulloa, 958 F.2d 864, 871 (9th Cir. 1992).  "Reliance on the transactional nucleus element is especially appropriate because the element is 'outcome determinative.'"  ProShipLine Inc., 609 F.3d at 968 (quoting Mpoyo, 430 F.3d at 988).

12

1       In Case No. 2:03-cv-00891 GGH, Magistrate Judge Hollows summarized the facts
2  alleged by plaintiff in that matter as follows:

> Plaintiff, a Hispanic Male, began working in 1986 as a custodian for the U.S. Postal Service. In 2001, he was working at the Royal Oaks facility under supervisor Hayward Washington. Plaintiff had complained about how he was being treated by Washington to his shop steward several times, and then got in an argument with Washington on October 5, 2001. According to Olivar's deposition, Washington told him that he could not have "official" time (overtime) to work on his EEO matter that day, and to call his shop steward the following Monday. Washington then threatened to call the police and slammed the door when Olivar left his office. Olivar believed this conduct was in retaliation for his intention to file an EEO complaint. Washington's version of this incident is that Olivar became enraged when Washington told him he could not have overtime to fill out his EEO paperwork, and locked the door to Washington's office, yelling. Washington said he would call the police if Olivar did not leave his office because he felt threatened.
>
> After the manager of maintenance at the Royal Oaks facility, Micheal Young, investigated the incident, he gave Olivar a new supervisor, Randy Davis. Olivar claims that Washington continued to harass him by "watching" and "looking" at him. At his deposition, Olivar conceded that Washington could have been angry because Olivar wanted overtime to do this paperwork, and not because Olivar was filing an EEO complaint. Under Davis, Olivar had the same job duties and pay.
>
> In regard to Micheal Young, Olivar claims that this supervisor racially discriminated against him in the manner in which he investigated the argument with Washington. At deposition, he explained only that the forms were not filled out properly and that his version was not recorded on the form. Olivar claims that Young knew of his prior EEO activity.
>
> Olivar also claims that Young discriminated against him on October 30, 2001when he asked Olivar to lower the volume on his radio which was playing soul music, while Young did not ask his Caucasian coworker to lower his volume while he was playing country music. At deposition, Olivar admitted that Young told both Olivar and his coworker to lower their music.
>
> On December 14, 2001, while at a weekly safety meeting, Olivar claims that another supervisor, Randy Davis, interrupted plaintiff's question and told him to discuss it with him later.
>
> In January, 2002, Olivar requested and received a new position at the West Sacramento facility, with supervisor Vince Arrioja.

13

> Plaintiff claims that he tried to talk to this supervisor about an overpayment to plaintiff and request that his paycheck be corrected, but that Arrioja was "rude and unprofessional" to him, and screamed at him. Plaintiff conceded that Arrioja did not say anything at all about plaintiff's race, color, prior EEO activity or mental status. Plaintiff did not know whether Arrioja knew of his previous EEO activities, but only speculated at his deposition.
>
> In August, 2002, Olivar was reassigned to the facility at Sacramento Airport. Olivar quit on July 25, 2005, because he thought coworkers were making jokes about him, but he admits that none of the jokes were about his race or color.

(Case No. 2:03-cv-0891 GGH, Doc. No. 134 at 3-5.)

Because both of plaintiff's lawsuits arose from the alleged conduct of the same individuals, over the same time period, and stem from plaintiff's employment with the same defendant, plaintiff's claims in both the 2003 action and in this case relate to the same set of facts. See Mpoyo, 430 F.3d at 987. Moreover, both lawsuits filed with this court involve the identical claims of discrimination and retaliation. Thus, both lawsuits could have conveniently been tried together. Indeed, the two suits are essentially identical. The 2003 lawsuit and this lawsuit, therefore, arise out of the same transactional nucleus of facts.

Additionally, while the determination that two lawsuits arise from the same transactional nucleus of facts is outcome determinative, consideration of the remaining factors also weigh in favor of finding a transactional nucleus of facts. Both the lawsuits involve the alleged infringement of plaintiff's right to be free from discrimination and retaliation. If this court where to find in plaintiff's favor in this lawsuit, it would be entirely inconsistent with the court's prior entry of judgment in defendant's favor in the prior lawsuit. Finally, as is apparent that plaintiff's allegations in this case are based on the same evidence presented in the prior lawsuit upon which defendant prevailed. Thus, there is an identity of claims between this lawsuit and plaintiff's prior civil action filed in 2003 with this court.

With respect to the second element of res judicata, a dismissal based upon the granting of summary judgment in favor of defendant is considered a final judgment on the merits

for res judicata purposes. Mpoyo, 430 F.3d at 988. The final element of the test in determining whether an action is barred by res judicata requires "identical parties or privies in the two actions." (Id.) That element is easily satisfied here since the parties in both Case No. 2:03-cv-00891 GGH and in this action, plaintiff and defendant John E. Potter, are identical.

Plaintiff's discrimination and retaliation claims set forth in his complaint in this action are therefore barred by the doctrine of res judicata because they were raised, or could have been raised, in Case No. 2:03-cv-00891 GGH in which judgment was entered in favor of defendant. Defendant's motion to dismiss plaintiff's discrimination and retaliation claims in this action should therefore be granted.

III. Leave to Amend

The undersigned has carefully considered whether plaintiff may amend his complaint to state any claim upon which relief can be granted. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988). See also United States ex rel. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001) ("Futility of amendment can, by itself, justify the denial of leave to amend."); Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that, while leave to amend shall be freely given, the court does not have to allow futile amendments). Granting plaintiff leave to amend would clearly be futile in this instance given the nature of plaintiff's complaint and the defects noted above. Accordingly, the undersigned will recommend that plaintiff's complaint be dismissed without leave to amend.

CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (Doc. No. 39) be granted; and

2. Plaintiff's complaint (Doc. No. 1) be dismissed with prejudice and this action be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file and serve written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections shall be filed and served within seven days after the objections are served. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 16, 2010.

*/s/ Dale A. Drozd*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
olivar91.f&r